(No. 40013.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* DONALD LANG, Appellant.

*Opinion filed March 29, 1967.*

Ward, J., took no part.

Lowell J. Myers, of Chicago, for appellant.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and Elmer C. Kissane and James B. Zagel, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Schaefer delivered the opinion of the court:

On November 12, 1965, the defendant, Donald Lang, was indicted by the grand jury of Cook County for the crime of murder. The defendant is a deaf-mute who cannot hear or speak, was never taught to read or write or to use sign-language, and is unable to communicate with anyone in any language system. On December 15, 1965, the public defender was appointed to represent him and an order was entered directing that he be examined by the Behavior Clinic of Cook County. On January 5, 1966, Lowell J. Myers moved that he be appointed by the court to represent the defendant. Myers has had thirty years of experience in dealing with deaf-mute people and ten years of experience in representing deaf-mute people in legal matters. (See, *Myers* v. *County of Cook,* 34 Ill.2d 541.) The trial judge appointed Myers to represent the defendant and granted leave to the public defender to withdraw as his attorney.

The Behavior Clinic was directed to make a further investigation and the case was continued to January 20, 1966.

On that date the defendant's attorney filed a petition requesting a hearing before a jury on the question of the defendant's physical competence to stand trial. At that hearing the defendant's attorney testified as to his own experience in representing deaf-mutes, and his inability to communicate with the defendant, and stated that the defendant did not know the charges against him and was unable to co-operate with an attorney. Dr. William H. Haines, Director of the Behavior Clinic, testified that he was unable to communicate with the defendant, and he diagnosed the defendant's case as "mutism." He testified also that in his opinion the defendant did not know the nature of the charge against him, and was unable to co-operate with his counsel. The defendant's attorney then tendered a directed verdict finding that the defendant "was at the time of impaneling this Jury and is now physically incompetent to stand trial." The court directed the jury to return that verdict and the case was continued.

On February 21, 1966, the prosecution requested the entry of an order directing that the defendant be taken from the county jail at 9:00 A.M. on February 23, and brought to Dr. Helmar R. Mykelbust, Director of the Institute of Language Disorders of Northwestern University, for an examination and a report by Dr. Mykelbust to the court as to the ability of Donald Lang to communicate with others. The defendant's attorney objected, stating that "this is a matter that has already been passed upon by the jury" and "an attempt to make a collateral attack on the jury's verdict." He continued, "However, if you do grant the motion, I would like that the order be modified to provide that I can be present at the proceeding, that examination, because I think I should be present at every proceeding which affects the defendant."

The assistant State's Attorney then stated:

"Mr. Barish: Your Honor, in regard to the request of Mr. Myers, I have taken the initiative to ask Dr. Myklebust

as to the possibility of having outsiders or observers present, and Dr. Myklebust tells me also, in view of the fact the defendant is in custody, the Sheriff's police and perhaps Mr. Myers, if he so wishes, could be present at the examination, but only by virtue of looking through a one-way glass into the room where Dr. Mykelbust will conduct the examination.

"I don't know exactly what procedure the doctor will take in the examination, but I don't believe he will be able to conduct it if Mr. Myers is present in the same room, but I believe he will be able to look into the same room, and perhaps, even hear. I am not certain of that. * * *" The court then asked the defendant's attorney whether he wanted to say anything further. The attorney answered "No", and the court entered the order and continued the case to March 16.

On that date the defendant's attorney presented several motions. His motion that the indictment be dismissed because more than 120 days had elapsed since the defendant's arrest was denied. His motion that judgment be entered upon the verdict of the jury which was returned January 20, 1966, was not acted upon, but was "held in abeyance." His motion that the defendant be placed on trial for murder recited that "the defendant offers to waive his constitutional rights, and his legal rights, and the verdict of the jury made on January 20, 1966, that he is physically incapable of standing trial; and in order to obtain his liberty, offers to stand trial on a charge of murder, and here and now demands to be tried for murder in accordance with the indictment in this case." This motion was denied.

On March 31, 1966, the court granted the request of the State's Attorney that a jury be impaneled to inquire into the mental competency of the defendant. At the hearing the jury heard the testimony of Doctors Haines and Myklebust, Lowell J. Myers, the defendant's brother, step-

mother, and a life-long friend of the defendant. The jury returned a verdict finding defendant mentally incompetent. Judgment was entered on that verdict and also on the earlier verdict finding the defendant physically incompetent. The judgment directed the sheriff of Cook County to "take the defendant, DONALD LANG from the bar of this Court to the Common Jail of Cook County, thence to the Illinois Security Hospital at Chester, Illinois, and there to deliver the said DONALD LANG to the Department of Mental Health of the State of Illinois at said Institution. It is further ordered and adjudged that said DONALD LANG be confined in said Institution, as provided by the Law of the State of Illinois, until he shall have fully and permanently recovered from his mental incompetency."

On this appeal the sufficiency of the evidence to sustain the jury's verdict is not challenged, nor is it claimed that any errors occurred in the course of the hearing before the jury. The sole contention advanced is that the defendant "was entitled to the presence and assistance of his attorney at every important step in his case," and that "the exclusion of his attorney from the examination" by Dr. Myklebust "was a direct violation of both the state and federal constitutions."

The record does not sustain this contention. The order appointing Dr. Myklebust to examine the defendant neither permits nor prohibits attendance at the examination. When the defendant's attorney requested that the order be modified "to provide that I can be present," the assistant State's Attorney stated his belief, after discussing the matter with Dr. Myklebust, that the examination could not be conducted with the defendant's attorney present in the examining room but that the attorney could be present and could see into the examining room through a one-way glass, and perhaps even hear.

After that statement it was clear that the only barrier

to the attorney's observation was that he probably could not be present in the room in which the examination was conducted, although he would be able to see, and perhaps hear, what went on in that room. Immediately after that statement, the defendant's attorney said, in response to the court's inquiry, that there was nothing further he wanted to say. The record does not show any effort on the part of defendant's attorney to be present at the examination. Indeed he testified that on February 17, before the State's motion requesting the appointment of Dr. Myklebust was presented to the court, he had attempted to instruct the defendant not to co-operate in the examination, and that he thought the defendant understood the instruction.

Although the record thus does not sustain the single contention asserted upon this appeal, we are nevertheless of the opinion that the order entered by the circuit court was in one respect improper. Article 104 of the Code of Criminal Procedure is concerned with proceedings to determine the physical and mental competence of persons accused of crime. It provides that the court may appoint qualified experts to examine the defendant and to testify before a jury which is to be impaneled to determine the defendant's competence unless a jury is waived by the defendant. The statute further provides that a person found to be incompetent because of a physical condition shall remain subject to the order of the court during the continuance of that condition, and that one found to be incompetent because of a mental condition shall be committed to the Department of Mental Health.

The statute does not authorize the trial judge to determine the particular institution to which a person found to be incompetent because of a mental condition is to be confined. His authority is only to commit to the Department of Mental Health. Determination as to which of its institutions is best suited for the confinement of a particular incompetent is left to the Department. The judgment of the

circuit court of Cook County is therefore reversed, and the cause is remanded to that court with directions to enter a judgment committing the defendant to the Department of Mental Health.

*Reversed and remanded, with directions.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.